UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

Case No. 2:24-cr-20239

HONORABLE STEPHEN J. MURPHY, III

v.

DOMINIQUE THEUS,

        Defendant.

                                      /

**OPINION AND ORDER
<u>DENYING MOTION TO QUASH [17]</u>**

Defendant Dominique Theus moved to quash a search warrant that officers executed at his home. ECF 17. He argued that the warrant was not supported by probable cause and cannot be salvaged by the good-faith exception of *United States v. Leon*, 468 U.S. 897 (1984). The Government disagreed with him on both points. For the reasons below, the Court will deny the motion.

**BACKGROUND**

The Court relies on the text of the affidavit for the relevant facts. According to the affidavit, law enforcement officers with the Detroit Police Department responded to a shooting at a house on Pelkey Street after they received information that sixty-two shots were fired there. ECF 25, PgID 95. Twelve minutes later, DPD officers travelled five miles to St. John's Hospital after they received a report that the hospital was treating a gunshot victim. *Id.* at 96. An officer tried to speak to the victim, but the victim did not want to speak with law enforcement. *Id.* Believing that the victim

1

sustained his injuries at the Pelkey residence, officers sought and received a search warrant for the residence. *Id.*

Officers recovered surveillance footage that captured the shooting, *id.*, and they reviewed the footage. *Id.* at 97. Approximately thirty minutes before the shooting, an individual ("the suspect") arrived at the Pelkey residence armed with a handgun. *Id.* at 97–98. Although his face was initially blurry on the footage, as the suspect moved to enter the home two reviewing officers recognized him. *Id.* at 98. Still images confirm that the suspect's face was recognizable on the footage. *Id.* Later, a vehicle arrived outside of the Pelkey residence, and its occupants got out and shot at the home. *Id.* The suspect exited the Pelkey residence and returned fire. *Id.* at 99. The vehicle sped away and occupants of the Pelkey residence transported a shooting victim "to the hospital." *Id.* at 99–100. One of those occupants handed a handgun to the suspect. *Id.* at 99. The suspect wore a tether, and the tether data showed he was present at the Pelkey residence during the shooting. *Id.* at 100.

Officers reviewed the suspect's tether data from February 12–20, 2024. *Id.* at 101. The suspect was rarely at his known addresses. Instead, he frequently spent time at Theus's residence on Dresden Street and another residence on McCormick. The suspect was at Dresden immediately before he travelled to Pelkey armed with a handgun. He then spent much of the next several days at Dresden and McCormick. *Id.*

Officers sought a search warrant. The affiant for the warrant stated that the suspect was known to have carried illegal firearms in the past and during the Pelkey

2

Street shooting. *Id.* at 103. The affiant explained that in his experience, shooters like the suspect who are on bond or probation do not hide illegal firearms at their known addresses but stash them in other familiar places. *Id.* at 104. The affidavit included details of the Pelkey incident and the suspect's tether data showing that he spent the bulk of his time alternating between two residences.

Based on the information in the affidavit, the magistrate judge issued a search warrant for the Dresden residence. *Id.* at 93. Officers executed the warrant and found Theus laying in bed with a firearm. Theus moved to quash the warrant and suppress the evidence obtained from the Dresden home.[1] ECF 17.

## LEGAL STANDARD

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In general, the right requires that searches must be authorized by a warrant supported by probable cause. *Carpenter v. United States*, 585 U.S. 296, 304 (2018). "Probable cause exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991) (quotations omitted). And an affidavit made in pursuit of a warrant "must contain

---

[1] The Court need not have a hearing unless there are material fact disputes related to the motion. *See United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006). Because there is no factual dispute about the content of the affidavit and because the parties adequately briefed the issue, the Court will resolve the motion on the briefs without a hearing. *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

3

adequate supporting facts about the underlying circumstances to show that probable cause exists." *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996).

When a magistrate judge makes a probable cause determination, the magistrate judge need only "make a practical, common-sense decision" given the totality of the facts. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). And when reviewing a search warrant, courts must give "great deference" to the magistrate judge's determination while ensuring that the magistrate judge "had a substantial basis for concluding that probable cause existed." *Id.* at 236, 238–39 (alterations omitted). Accordingly, a magistrate judge's probable cause determination "should be reversed only if arbitrarily made." *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006).

Moreover, the so-called *Leon* good-faith exception instructs that "[c]ourts should not . . . suppress 'evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant.'" *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (quoting *Leon*, 468 U.S. at 922). The exception fails only when "the affidavit [used to obtain the search warrant] is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable." *Leon*, 468 U.S. at 923.

## DISCUSSION

I. <u>Probable Cause</u>

Whether the warrant was proper depends on whether the issuing judge's finding of probable cause was supported by a "substantial basis." *United States v. Jenkins*, No. 22-3687, 2023 WL 3963626, at *1 (6th Cir. June 13, 2023). And here, it was. The affiant noted that felons who illegally possess firearms typically hide them

4

somewhere that is not their registered address. *See United States v. Houghton*, 861 F. App'x 83, 90 (6th Cir. 2021) (noting that an officer's training and experience is relevant to the probable cause determination). Moreover, the allegations in the affidavit tied the suspect to the Dresden residence both immediately before the Pelkey shooting and numerous times in the days thereafter. The affidavit suggests that he visited Dresden more times than any other location in the days following the shooting. ECF 25, PgID 101–02. Accordingly, there was a clear nexus between the shooter, his firearm, and the Dresden residence. Taken together, the suspect's repeat visits to Dresden both before and after the Pelkey shooting, combined with the inference that he would likely hide the gun where he was temporarily staying, created the necessary "substantial basis" for a search on Dresden.

Theus argued that McCormick was just as likely a hiding spot for the suspect's handgun, so there could not be probable cause for his residence. ECF 17, PgID 51, 56. He provides no authority for this suggestion, and the affidavit lists many more visits to Dresden than to McCormick in the days following the shooting. ECF 25, PgID 101–02. Regardless, the Fourth Amendment requires only a "fair likelihood" that the evidence will be found, so a lesser possibility that the gun may have been found at McCormick does not necessarily defeat that there was probable cause to search Dresden. *See United States v. Sanders*, 106 F.4th 455, 466–67 (6th Cir. 2024); *United States v. Stearn*, 597 F.3d 540, 560 (3d Cir. 2010) (recognizing that "even if another location is an equally likely repository of evidence, a magistrate may infer probable cause to search" a residence based on circumstantial evidence establishing a "fair

5

probability that contraband or evidence of a crime will be found in a particular place") (citation omitted). The foregoing point is especially true when, as here, the Court is limited to ascertaining whether the issuing judge had a "substantial basis" for the probable cause determination. There was a sufficiently substantial basis here.

II.  <u>*Leon* Good Faith</u>

Even if the warrant were not supported by probable cause, it would be such a close question that the good-faith exception would apply. The exception fails only when "the affidavit [used to obtain the search warrant] is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable." *Leon*, 468 U.S. at 923. As discussed above, there was a substantial basis for a judicial officer to believe that there was probable cause, so an officer's reliance on that determination was not objectively unreasonable. "After all, where it is simply debatable whether probable cause exists, an officer is justified in relying on a judicial finding of probable cause." *United States v. Neal*, 106 F.4th 568, 573 (6th Cir. 2024). Accordingly, the Court concludes in the alternative that the *Leon* good-faith exception would apply even if probable cause were lacking.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant Theus's motion to

6

quash [17] is **DENIED**.

    **SO ORDERED.**

                                            s/ Stephen J. Murphy, III
                                            STEPHEN J. MURPHY, III
                                            United States District Judge

Dated: October 8, 2024